UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO SANCHEZ,<br><br>                                    Petitioner,<br><br>v.<br><br>NEIL MCDOWELL, Warden,<br><br>                                    Respondent. | Case No.:  22-CV-0192-GPC-KSC<br><br>**JUDGMENT AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN PART AND DENYING PETITION FOR WRIT OF HABEAS CORPUS [ECF Nos. 1 & 23]** |

## I.    INTRODUCTION

On February 9, 2022 Petitioner Orlando Sanchez filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On June 29, 2022 Respondent Neil McDowell filed an answer and opposition to the petition, ECF Nos. 14 & 15, and lodged the appropriate state court records, ECF No. 17.  On July 22, 2022 Sanchez filed a Traverse. ECF No. 21.  On October 3, 2022 Magistrate Judge Karen S. Crawford issued a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d), recommending that the Court deny the petition.  ECF No. 23.  No objections were filed.

After a thorough review of the issues and for the reasons set forth below, the Court ADOPTS the Magistrate Judge's R&R in part and DENIES the petition for writ of habeas corpus.

## II.     PROCEDURAL BACKGROUND

Petitioner Orlando Sanchez seeks a writ of habeas corpus challenging his conviction in the Superior Court for the County of San Diego for first degree murder with a firearm enhancement and possession of a firearm by a felon, for which Sanchez received a sentence of 53 years to life.  *See* ECF No. 1.  Sanchez raises five separate grounds for relief:  (1) the trial court failed to instruct the jury on voluntary manslaughter based on imperfect self-defense; (2) the trial court failed to instruct the jury on voluntary intoxication; (3) the trial court's manslaughter instructions on self-defense, provocation, and sudden quarrel/heat of passion were incomplete and misleading; (4) the three claimed instructional errors amounted to cumulative error sufficient to deprive petitioner of his due process right to a fair trial; and (5) the trial court violated his due process rights by imposing restitution without holding an "ability-to-pay hearing or finding there was an ability to pay."  ECF No. 1 at 6–10; ECF No. 1-2 at 9.[1]

### A.     State Court Trial Proceedings

The Court defers to state court findings of fact and presumes them to be correct unless petitioner rebuts that presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Parke v. Raley*, 506 U.S. 20, 35–36 (1992); *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008). Sanchez makes no effort to rebut the presumption of correctness.  Accordingly, the Court briefly recites the facts pertinent to this Petition as set forth in the reasoned opinion of the California Court of Appeal, which describes the substance of the evidence introduced at trial in detail.  *See* ECF No. 17-21 at 2–13.

---

[1] Page numbers are based on CM/ECF pagination.

Jordy Lopez died during surgery in a San Diego hospital after being shot in the back on October 15, 2016.  *Id.* at 2, 5–6.  Lopez's friend, N.D., was with him the night of the shooting.  *Id.* at 2.  N.D.'s version of events was that he and Lopez were walking to N.D.'s cousin's house in Linda Vista when two men in a small, white SUV passed by them.  *Id.* at 2–3.  The SUV's passenger was staring at them aggressively.  *Id.* at 3.  N.D. then saw the SUV park across the street from N.D.'s cousin's house, and the two passengers went into the courtyard of an apartment complex.  *Id.* at 4.  The SUV passengers came outside with three or four other men—some of whom were holding beer bottles—and the passenger who had been staring at N.D. and Lopez began taunting N.D. and Lopez in Spanish.  *Id.* The group of men then started an unprovoked fight with N.D. and Lopez, during which N.D. was knocked to the ground shortly before he heard multiple gunshots.  *Id.* N.D. saw some of the men flee from the shooting in the white SUV before he discovered Lopez lying on the ground.  *Id.* at 4–5.

The police arrived on the scene and interviewed a dying Lopez who told them there was no reason why anybody would want to shoot him, but that he had seen "suspicious" people in a car, specifically two men in a small, white SUV that had been driving slowly on the street.  *Id.* at 5. Two other percipient witnesses who lived near the scene of the shooting testified they heard gunshots immediately before seeing a small, white SUV (which one of the witnesses identified as a Scion XB) speed away from the scene.  *Id.*

Another witness, Luis N., testified he had been Sanchez's roommate and Sanchez had at one point in the past driven a white Scion.  *Id.* at 7–8.  He testified that Sanchez admitted his involvement in shooting Lopez to Luis N. sometime in November or December 2016.  *Id.* at 8.  Sanchez purportedly explained the shooting to Luis N. in more detail at a later time, saying two "Cholos" had been "bothering" or "bugging" Sanchez for a beer; that Sanchez had seen "something chrome" flashing under one of the "Cholo's" shirts; and that Sanchez then left the street, went to the apartment complex where he lived

at the time, retrieved a gun from his room, came back to the street, and shot one of the men. *Id.* at 8–9.  Sanchez told Luis N. he had been with his friend Alfredo, who also went by the name of "Billy," on the night of the shooting.  *Id.* at 9.

San Diego Sheriff Department detective Manuel Heredia testified about an undercover operation in San Diego jail during which deputies solicited information from Alfredo.  *Id.* at 11.  Alfredo told deputies he had been with Sanchez on the night of the shooting, both of them were drunk and high, and there had been a "brawl" during which Sanchez had shot somebody. *Id.* at 11–12.  Alfredo's wife, Patricia C., also testified at trial about Alfredo's version of events from the night of the shooting. *See id.* at 13.  According to Patricia C., Alfredo told her that he and Sanchez had been drinking the night of the shooting; some guys "wanted to start a fight" with them while Sanchez was asleep in the car; and Sanchez responded by going back to his apartment, getting a gun, and shooting one of the men.  *Id.*  To her recollection, Alfredo never mentioned anything about one of the men potentially being armed prior to the shooting.  *Id.*  After hearing this and other evidence not germane to this Petition, the jury convicted Sanchez of first-degree murder with a firearm enhancement, and the Superior Court consequently sentenced Sanchez to "three years plus 50 years to life in prison." *Id.* at 2.

## B.    Post-Trial Procedures

Sanchez appealed his conviction directly to the California Court of Appeal.  ECF Nos. 1 at 2; 17-21.  Sanchez's direct appeal raised and exhausted the same five grounds for relief he asserts in this Petition.  *See generally* ECF No. 17-21.  The Court of Appeal unanimously affirmed the judgment against Sanchez.  *See id.* at 33.  Sanchez then petitioned the California Supreme Court for review.  ECF No. 1-2.  The Supreme Court rejected his Petition without comment on February 10, 2021.  *See* ECF Nos. 1-3; 17-23. Sanchez timely filed this Petition on February 9, 2022.  *See* ECF No. 1.

Sanchez has also filed a Petition for a writ of habeas corpus in the California Superior Court alleging ineffective assistance of counsel and insufficient evidence to support the conviction against him.  *See* ECF No. 1 at 3.  These claims have not been exhausted in the state court system because Sanchez did not raise them during his direct appeal.  *See* ECF 17-23.  Thus, Sanchez may not raise them in this Petition. *See King v. Ryan*, 564 F.3d 1133, 1138 (9th Cir. 2009).  Any subsequent federal habeas petition based on his ineffective assistance of counsel or sufficiency of the evidence claims will be barred unless Sanchez shows either an intervening, retroactive change in the Supreme Court's constitutional doctrine, or new facts that could not have been discovered with reasonable diligence and which "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2).

If Sanchez had filed a so-called "mixed" petition alleging both exhausted and unexhausted claims, he would have had the opportunity to request a stay and abeyance pending the exhaustion of his unexhausted claims.  *Rhines v. Weber*, 544 U.S. 269, 275–76 (2005).  Sanchez initially suggested he would seek a stay and abeyance.  *See* ECF No. 1 at 5.  He subsequently elected to exclude his unexhausted claims from this Petition because they would cause "delay."  *See* ECF No. 4.[2]  Accordingly, this Court will address the merits of the fully exhausted claims.

---

[2] This Court has no obligation to advise Sanchez on the wisdom or folly of his decision to gamble a procedural bar to habeas relief for his unexhausted claims against the expedience of proceeding only on his exhausted claims.  *Cf. Pliler v. Ford*, 542 U.S. 225, 233 (2004); *Robbins v. Carey*, 481 F.3d 1143, 1148–49 (9th Cir. 2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   STANDARD OF REVIEW

Federal habeas relief is available to an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This Court may not issue a writ of habeas corpus based solely on alleged error of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  A court will only entertain a writ of habeas corpus on behalf of a state court prisoner if the federal claims have been adjudicated on the merits in state court.  28 U.S.C. § 2254(b)–(c).  A state court adjudication may be overturned if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Id.* § 2254(d)(1).  This "standard is intentionally difficult to meet," and it incorporates "a presumption that state courts know and follow the law," which makes federal habeas review "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citations and internal quotation marks omitted).

A petitioner must first identify the "clearly established" federal law at issue.  *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013); *Robertson v. Pichon*, 849 F.3d 1173, 1182 (9th Cir. 2017).  Only the direct holdings of the Supreme Court, not its dicta, are "clearly established" for purposes of the statute.  *Woods*, 575 U.S. at 315; *Robertson*, 849 F.3d at 1182.  The holdings of circuit courts cannot constitute "clearly established" federal law if the Supreme Court has not itself announced a clear rule.  *See Lopez v. Smith*, 574 U.S. 1, 6 (2014); *Robertson*, 849 F.3d at 1182.  If there is no directly controlling Supreme Court precedent, habeas relief will be unavailable to the petitioner because the law is not "clearly established."  *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Robertson*, 849 F.3d at 1182.

If a petitioner can identify "clearly established" law, he or she must also demonstrate the state court made "an unreasonable application" of federal doctrine, "not merely [a] wrong" application, and "even clear error will not suffice." *Woods*, 575 U.S. at 316 (citations and internal quotation marks omitted). To justify habeas relief "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *accord Robertson*, 849 F.3d at 1182.

Should a petitioner cross the high hurdles of both identifying a "clearly established" law and showing the state court's ruling is sufficiently unreasonable as to constitute error susceptible to habeas review, he or she must further demonstrate any error was prejudicial under the standard announced by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). *See Fry v. Pliler*, 551 U.S. 112, 121–22 (2007); *Merolillo v. Yates*, 663 F.3d 444, 454–55 (9th Cir. 2011). Under that standard, "[h]abeas relief is warranted only if the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Merolillo*, 663 F.3d at 454 (citing *Brecht*, 507 U.S. at 637–38). The federal court's review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The Court will "look through" any summary denials to the "last reasoned opinion" issuing from the state judiciary. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). Because the California Supreme Court denied Sanchez's Petition for review without comment, this Court will "look through" to the decision of the California Court of Appeal. ECF No. 17-21.

1
2

**IV.   SANCHEZ HAS SHOWN NO DEPRIVATION OF HIS FEDERAL CONSTITUTIONAL RIGHTS.**

3
4
5
6
7
8
9
10
11

Sanchez raises five separate grounds for relief:  (1) the trial court failed to instruct the jury on voluntary manslaughter based on imperfect self-defense; (2) the trial court failed to instruct the jury on voluntary intoxication; (3) the trial court's manslaughter instructions on self-defense, provocation, and sudden quarrel/heat of passion were incomplete and misleading; (4) the three claimed instructional errors amounted to cumulative error sufficient to deprive Petitioner of his due process right to a fair trial; and (5) the trial court violated his due process rights by imposing restitution without holding an "ability-to-pay hearing or finding there was an ability to pay."  ECF No. 1 at 6–10; ECF No. 1-2 at 9. This Court will address each argument in turn.

12
13

**A.   The Trial Court Did Not Err When It Refused to Give An Imperfect Self-Defense Instruction.**

14
15
16
17
18
19
20
21
22

Sanchez alleges the trial court violated his due process rights by failing to give an instruction on the lesser included offense of imperfect self-defense.  ECF No. 1.  Sanchez acknowledges "failure to instruct on a lesser included offense is ordinarily only state law error," which places the matter beyond the scope of this Court's review.  *See* ECF No. 17-18 at 48 (citing *People v. Breverman*, 19 Cal. 4th 142, 149 (1998)).  At the same time, he identifies two putative federal claims this Court may review.  Sanchez first claims the failure to instruct on imperfect self-defense improperly absolved the prosecution of proving "malice" beyond a reasonable doubt.  *See* ECF 17-18 at 48–49.  He also claims the failure to instruct deprived him of his due process right to present a defense.  *Id.* at 49–50.

23
24
25
26
27
28

The California Court of Appeal did not directly address either federal constitutional issue in its opinion.  *See* ECF No. 17-18 at 48–50; ECF No. 17-21 at 13–21.  "When a state court rejects a federal claim without expressly addressing the claim, a federal habeas court must presume that the federal claim was adjudicated on the merits. . . ."  *See Johnson v.*

*Williams*, 568 U.S. 289, 300–01 (2013).  Here, the Court of Appeal assumed, without deciding, any claimed federal constitutional error would have been harmless.  *See* ECF 17-21 at 20.  Because nothing in the record suggests this Court should question the presumption of on-the-merits adjudication, the Court will address below both constitutional issues.

> **1.    Due process did not require an instruction on imperfect self-defense.**

Sanchez argues instructional errors can raise constitutional issues in the specific context of voluntary manslaughter because erroneous instructions can impermissibly absolve the prosecution of its burden to prove every element of a murder charge beyond a reasonable doubt.  ECF No. 17-18 at 48–49.  Following the close of evidence, Sanchez requested an imperfect self-defense instruction, which the trial court declined to give.  ECF No. 17-11 at 114–116, 129–32 (8 RT 1164:15–1166:2, 1179:5–1182:12).  Sanchez's argument as to the appropriate rule of decision here has merit, but respondent has the better argument as to the appropriate result.

Due process requires the government prove every element of a charged crime beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  As a corollary to that rule, any time a state makes "malice" an element of murder, and the absence of malice commutes murder to voluntary manslaughter under state law, constitutional due process requires that the prosecution prove the absence of the commuting factors beyond a reasonable doubt; but only if the evidence raises triable issues of voluntary manslaughter for the jury.  *See Mullaney v. Wilbur*, 421 U.S. 684, 697–98, 703–04 (1975); *see also United States v. Begay*, 33 F.4th 1081, 1088 (9th Cir. 2022) (noting under *Mullaney* the prosecution bears the burden of disproving the mitigating factor and the trial court must so instruct the jury, but "such an instruction is only required if the defense is fairly raised"); *accord United States v. Roston*, 986 F.2d 1287, 1290 (9th Cir. 1993); *Walker v. Endell*, 850

9

F.2d 470, 472 (9th Cir. 1987).  Under California law, "imperfect self-defense" commutes murder to manslaughter because it negates the element of malice.  *See People v. Breverman*, 19 Cal. 4th 142, 153-54 (1998); *see also id.* at 189 (Kennard., J., dissenting) ("[T]he complete definition of malice is the intent to kill . . . plus the absence of both heat of passion and unreasonable self-defense." (emphasis removed)).  Thus, the Court must resolve whether, on the facts of this case and given how California treats the "malice" element of a murder charge, due process required the trial court to instruct the jury on voluntary manslaughter by way of imperfect self-defense, including the prosecution's obligation to prove beyond a reasonable doubt that Sanchez had not engaged in imperfect self-defense.

Respondent contends there is no federal issue here because "the failure . . . to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim." ECF No. 14-1 at 15:21–25.  Respondent is partly correct:  while the Supreme Court has expressly held a trial court must instruct on lesser included offenses in capital cases, *see Beck v. Alabama*, 447 U.S. 625, 635–38 (1980), it has reserved judgment on whether due process requires the giving of a lesser-included offense in *all* criminal cases, *see Keeble v. United States*, 412 U.S. 205, 213 (1973); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984).  Respondent suggests this Court should follow *Solis v. Garcia*, 219 F.3d 922, 924–25, 928–29 (9th Cir. 2000), in which the Ninth Circuit held due process did not require a voluntary manslaughter instruction in a case where the defendant had been convicted of second-degree murder under an aiding and abetting theory.  But, as that Court noted, *Solis* was "not a *Winship*-type case . . . because the instructions did not omit any element of the second degree murder charge against" the defendant, which in turn did not require proof of "malice" *on Solis's part* because he was liable as an aider and abettor, not a principle. *See* 219 F.3d at 927. Thus, the line of cases following *Beck* and *Keeble*, which address the issue of lesser included offenses broadly without regard to the specific rule of *Mullaney*,

do not resolve Sanchez's actual argument, which invokes "clearly established" Supreme Court doctrine specific to murder charges where the state must prove malice, and where proof of voluntary manslaughter negates the element of malice.[3]

Having determined *Mullaney* supplies the rule of decision here, not *Beck* or *Keeble*, this Court must determine whether due process required the trial court to instruct on imperfect self-defense in this case. As set forth, *supra*, due process would only require giving the instruction if the trial record placed voluntary manslaughter properly in issue. In California the lesser included offense of imperfect self-defense requires, among other elements, that "[t]he defendant *actually* believed" he "was in *imminent danger* of being killed or suffering great bodily injury." *See* CALCRIM 571 (emphasis added).[4] After hearing an offer of proof from Sanchez's counsel, the trial court rejected Sanchez's request for a lesser included offense instruction. ECF No. 17-11 at 126–32 (8 RT 1176:1–1182:12). The court reasoned that, although a modicum of circumstantial evidence suggested N.D. could have been armed with a handgun, there was insufficient evidence to

---

[3] The two lines of cases are not in conflict. One analyzes the issue in terms of the potential sentence faced by the accused. The other focuses instead on the prosecution's burden to secure a conviction. A hypothetical case might be both, e.g., a murder case in which state law makes malice an element of murder and the prosecution seeks the death penalty; or it might be neither, e.g., a property crime case in which the accused faces no more than several years in prison. This case is one (because Sanchez was tried for murder in California, where "malice" is an element of murder) but not the other (because Sanchez did not face the death penalty). The Court also notes not *every* murder charge will implicate *Mullaney* because other states treat the *mens rea* of murder differently, and not all state laws will implicate due process in the same fashion. *See, e.g.*, *People v. Patterson*, 39 N.Y.2d 288, 302–04 (1976).

[4] California's pattern jury instructions are, when given, compliant with *Mullaney* because they accurately instruct the jury on the prosecutions' burden to prove malice beyond a reasonable doubt, including proof the defendant did not act in imperfect self-defense. *See* CALCRIM 571.

1   submit the question to the jury because, at the time of the shooting, Sanchez left the group

2   that included N.D., went to his apartment to get a gun, then returned and shot Lopez.  *Id.*

3   at 129–32 (8 RT 1179:5–1182:12).  Accordingly, the court agreed with the prosecution that

4   there never could have been an *actual* belief, however unreasonable, of *imminent* harm

5   because harm cannot be "imminent" when the accused retreats from any potential threats

6   and then later returns of his own accord.  *Id.* at 127–28, 129, 132 (8 RT 1177:2–1178:16,

7   11798:5–9, 11982:8–12).

8        The Court of Appeal rejected Sanchez's claim of trial error.  *See* ECF No. 17-21 at

9   17–20.  Based on its independent review of the record, that Court of Appeal agreed with

10   the trial court, holding "there was insufficient evidence to support a finding that defendant

11   actually feared that N.D. or Jordy posed" a sufficiently "imminent" danger to warrant

12   giving the requested instruction.  *Id.* at 19.  If the record were so limited, this Court could

13   easily conclude the Court of Appeal's decision was not "beyond any possibility of fair-

14   minded disagreement" about the requirements of due process, and thus beyond the reach

15   of habeas review.

16        But this case involves a twist.  The trial judge agreed, upon Sanchez's request, to

17   give CALCRIM 505 (Justifiable Homicide: Self-Defense or Defense of Another).  *See* ECF

18   No. 17-11 at 132, 135 (8 RT 1132:8–16, 1185:14–19).  In so doing, the court overruled an

19   objection from the prosecution that, based on the evidence in the case, there was no

20   imminent threat that could justify self-defense or the defense of another.  *Id.* at 133–34 (8

21   RT 1183:8–1184:2).  Under California law, the requirement of "imminent" harm is

22   identical for so-called "perfect" self-defense, which is a complete defense to a homicide

23   charge, and "imperfect" self-defense, which merely commutes murder to voluntary

24   manslaughter.  *Compare* CALCRIM 505 *with* CALCRIM 571.  The trial court's ruling

25   thus presents, at least on the surface, a material inconsistency because it ruled the evidence

26

27                                      12

28

was simultaneously insufficient for one instruction but apparently was sufficient for the other.

Sanchez argued to the Court of Appeal that any time the evidence warrants a requested instruction on perfect self-defense, the evidence is per se sufficient to require a mandatory instruction on imperfect self-defense. *See* ECF 17-18 at 45 (citing *People v. Ceja*, 26 Cal. App. 4th 78, 85–86 (1994), *overruled on other grounds*, *People v. Blakeley* 23 Cal. 4th 82, 91 (2000)). The Court of Appeal rejected that contention, noting a split of authority in California appellate courts, and declining to adopt the bright line rule formulated in the concurrence to the *Ceja* case. ECF No. 17-21 at 19–20. This Court's review does not encompass the state-law issue of whether the concurrence in *Ceja* correctly states California law. If, however, the inconsistency in the trial court's reasoning is fundamentally irreconcilable—that is to say, if the evidence *required* the trial court to make a binary choice between instructing on *both* theories or *neither* theory—then the state court's application of constitutional law might rise to the level of legal error about which there could not be fair-minded disagreement, and which could warrant habeas relief, because it could prove logically irreconcilable.

Based on this Court's independent review of the record, however, any perceived inconsistencies in the trial court's reasoning evaporate upon considering its justifications for denying the request for a lesser included offense instruction while simultaneously instructing on perfect self-defense. In addition to the due process requirement of lesser included offense instructions imposed by *Mullaney*, "a trial court must instruct on the defendant's theory of the case." *See United States v. Seymour*, 576 F.2d 1345, 1348 (9th Cir. 1978). It has been repeatedly noted this standard is essentially mandatory, although the exact language proposed by a criminal defendant need not be followed so long as the jury instructions as a whole accurately convey the defense theory. *See, e.g.*, *United States v. Lopez*, 885 F.2d 1428, 1434 (9th Cir. 1989), *overruled on other grounds by Schmuck v.*

*United States*, 489 U.S. 705 (1989); *United States v. Kenny*, 645 F.2d 1323, 1337 (9th Cir. 1981); *United States v. Sibley*, 595 F.2d 1162, 1164-65 (9th Cir. 1979); *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir. 1977).   Instructions that accurately reflect the defendant's "theory of the case" must be given so long as "it is supported by law and has some foundation in the evidence."  *See United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985).

Sanchez justified the request for a perfect self-defense instruction not because due process required it, but because, at least at the time his counsel argued the issue to the trial court, that was his theory of the case.  *See* ECF No. 17-11 at 134 (8 RT 1134:3–24).  In contrast, Sanchez's counsel indicated imperfect self-defense was *not* the defendant's theory of the case.  *Id.* at 126–27 (8 RT 1176:14–1177:1).  Thus, two different legal standards governed the trial court's rulings on giving the two instructions.  Under the "defense theory of the case" rule, the trial court was virtually required to give the instruction upon request so long as there was "some foundation in the evidence" supporting Sanchez's theory.  To give the lesser included offense instruction, on the other hand, the trial court had to conclude that, even if not requested, and even if over objection, there was sufficient evidence on all the elements to present the lesser included offense to the jury as a fundamental requirement of due process.

Based on this Court's review of the trial record, only one witness, Sanchez's former roommate Luis N., presented a version of the facts in which there was even slight evidentiary support for an inference—however weakly drawn—that one of Jordy Lopez's friends might have been armed at the time of Lopez's murder.  ECF No. 17-10 at 31–34 (7 RT 881:8–884:6).  Specifically, that witness testified to Sanchez's statement he had seen "something chrome" underneath the shirt of a man in Lopez's crew shortly before the shooting.  *Id.* at 32–33 (7 RT 882:18–883:18).  At the same time, that same witness testified Sanchez retreated to a place of safety, got his own gun, and then returned before shooting

1  Lopez. *Id.* at 31–33 (7 RT 881:8–883:26).[5]  He also testified Sanchez shot Lopez after

2  some "cholos" had been "bugging" Sanchez for a beer, not because of any violence or

3  threats of violence aside from one man allegedly flashing a gun.  *Id.*  It was well within the

4  bounds of reason for the Court of Appeal to conclude, based on the only version of events

5  in which N.D. might have been armed, Sanchez could not have feared "imminent" harm.

6  At the same time, the Court of Appeal could reasonably conclude this *de minimis*

7  evidentiary showing satisfied the burden to justify an instruction on the defendant's theory

8  of the case.

9      By silently affirming the trial court's ruling and rejecting Sanchez's due process

10  arguments, the Court of Appeal implicitly ruled the evidence satisfied the threshold for a

11  "defense theory of the case" instruction yet did not rise to the level where due process

12  required a lesser included offense instruction under *Mullaney*.  This Court is satisfied the

13  Court of Appeal ruled well within the bounds of reason when it rejected Sanchez's claims

14  of error on appeal.  Accordingly, this Court finds there was no constitutional error.

15          **2.    Sanchez was not deprived of his right to present a defense.**

16      As set forth, *supra*, the due process right to present a defense requires the jury be

17  instructed on the "defendant's theory of the case." *See United States v. Seymour*, 576 F.2d

18  1345, 1348 (9th Cir. 1978).  Sanchez argues the trial court's refusal to instruct on imperfect

19  self-defense deprived him of this right.  ECF No. 17-18 at 41–49. Neither the Court of

20  Appeal's Opinion nor respondent's Opposition addresses this claim.  *See* ECF No. 17-21

21  at 17–21; ECF No. 14-1 at 29–30.  As this Court has already noted, Sanchez's theory of

22  the case was perfect self-defense, at least at the time his counsel argued jury instructions

_____

24
25  [5] Sanchez's other friend, Alfredo, also relayed a version of the facts to his wife in which
    Sanchez retreated to a place of safety before returning to shoot Lopez, but he did not state
26  that anybody in the victim's cohort was armed at the time of the shooting.  *See* ECF No.
27  17-11 at 39–40, 44 (8 RT 1089:25–1090:15, 1084:2–7).

to the trial court, and he declined to make imperfect self-defense his theory of the case. *See* ECF No. 17-11 at 126–27, 134 (8 RT 1134:3–24, 1176:14–1177:1).[6]   Sanchez has not identified any authority suggesting a trial court must instruct on a theory of the case the defendant later argues he *could have* advanced.  This Court can therefore conclude Sanchez was not entitled to the omitted instruction under the "theory of the case" doctrine because imperfect self-defense was not in fact his theory of the case.  The Court of Appeal's implicit rejection of Sanchez's argument to the contrary was therefore well within the bounds of reason, and it warrants no intervention by this Court.

**B.    The Voluntary Intoxication Instruction Raises No Constitutional Issues.**

Sanchez charges the trial court with erroneously refusing to give an instruction on "voluntary intoxication."  ECF No. 1 at 7; ECF No. 17-18 at 55.  He asserted two different grounds for federal constitutional error before the California Court of Appeal, claiming the failure to instruct on intoxication (a) absolved the prosecution of its burden to prove "the required mental state" for the crime of murder "beyond a reasonable doubt"; and (b) "affected Sanchez's constitutional right to have the jury determine every material issue presented by the evidence."  ECF No. 17-18 at 59.

**1.    Due Process Did Not Require a Voluntary Intoxication Instruction as a Lesser Included Offense.**

---

[6] As the Court of Appeal noted, Sanchez's counsel appears to have changed course from treating this as a "self-defense" case, choosing instead to argue during closing that Sanchez was "not the shooter." *See* ECF No. 17-21 at 28–29. This Court is not concerned with how, why, or even if counsel made the decision to change course. This tactical trial decision does not impact this Court's analysis of Sanchez's Petition because, as far as the trial court's duty to determine the appropriate jury instructions was concerned, the trial court's reasoning satisfied due process at the time counsel made the representations about what was the defense theory of the case.

Sanchez claimed on appeal that failing to instruct on voluntary intoxication "violated the due process guarantee that requires the prosecution in a first[-]degree murder prosecution to prove 'the applicable *mens rea* for that crime' beyond a reasonable doubt." ECF No. 17-18 at 59 (citing *People v. Koontz*, 27 Cal. 4th 1041, 1080 (2002)). To begin with, *Koontz* does not stand for that point of law, as the cited portion of the California Supreme Court's opinion merely sets forth the legal standard for deliberation and premeditation; it does not link them to any due process guarantee. *See* 27 Cal. 4th at 1080. Although Sanchez provided no further substantive analysis other than a single sentence and a citation to *Koontz*, this Court understands the gravamen of his argument to be that he believes *Winship* and *Mullaney* require lesser included offense instructions in cases of voluntary intoxication as they do in cases of imperfect self-defense, at least when the record supports submission of the issue to the jury. Respondent does not accurately address this argument because it construes the issue as whether due process required the voluntary intoxication instruction as Sanchez's theory of the case. *See* ECF No. 14-1 at 32–33. Sanchez raises no such argument. *See* ECF No. 17-18 at 59. Respondent nonetheless inadvertently reaches the correct conclusion because Sanchez presents no federal issue.

As set forth, *supra*, when state law distinguishes between murder and manslaughter based on mitigating factors that negate the element of "malice" necessary to a charge of murder, the prosecution must prove the absence of the mitigating factors beyond a reasonable doubt if, but only if, the evidence could support a finding of the mitigating factors. *See Mullaney v. Wilbur*, 421 U.S. 684, 697-98, 703–04 (1975); *People v. Breverman*, 19 Cal. 4th. 142, 189 (1998) (Kennard., J., dissenting). The California Supreme Court has expressly held state law does *not* recognize voluntary intoxication as a factor that would commute a murder charge to voluntary manslaughter, which is a sharp distinction from the lesser included offense of involuntary manslaughter by way of imperfect self-defense. *See People v. Saille*, 54 Cal. 3d 1103, 1113–17 (1991). Thus,

because intoxication does not commute murder to manslaughter by negating the malice element, due process never imposes a requirement upon the prosecution to prove the accused was not intoxicated at the time of a killing.

Even if there were a constitutional guarantee of an instruction on voluntary intoxication, the state court's application of such a precept would have been well within the bounds of reason here. Due process only requires a lesser included offense instruction in a murder case when the evidence is sufficiently substantial that it must be submitted to the jury. *See Mullaney*, 421 U.S. at 697–98, 703–04. As noted by the California Court of Appeal in this matter, voluntary intoxication instructions are only proper when there is evidence from which the jury could conclude the defendant was in fact intoxicated *and* his intoxication in fact affected his ability to form the specific intent to commit the charged crime. *See* ECF No. 17-21 at 22–23 (citing *People v. Williams*, 16 Cal. 4th 635, 677 (1997)). Here, Sanchez requested the trial court instruct on voluntary intoxication because circumstantial evidence might arguably have supported a conclusion that Sanchez was intoxicated at the time of the shooting. *See* ECF No. 17-11 at 116, 117 (8 RT 1166:4–21, 1167:9–18). The Court ultimately denied the requested instruction because there was no evidence suggesting Sanchez's intoxication affected his ability to form the specific intent to kill. *See id.* at 135–39 (8 RT 1185:14–1189:16).

This Court has found no evidence in the record from which a jury could conclude Sanchez was so affected. Thus, even if due process required the prosecution to disprove intoxication in an appropriate case, this would not be a such a case because there was no evidence to submit to the jury on an essential element of voluntary intoxication. Based on the record before this Court, the California courts would have reached the only reasonable application of *Mullaney* on these facts, which would come nowhere near the standard for error prescribed by 28 U.S.C. § 2254(d).

### 2.   Sanchez's "Materiality" Argument Does Not Raise a Constitutional Issue.

Sanchez claims the trial court's refusal to instruct on voluntary intoxication "affected [his] constitutional right to have the jury determine every material issue presented by the evidence, to resolve disputed factual issues, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." ECF 17-18 at 59 (internal citations omitted). Sanchez does not identify a United States Supreme Court case that sets forth "clearly established" case law that might be implicated here. He cites one case addressing the standard for reviewing so-called *Jackson* claims in which a convicted prisoner challenges the sufficiency of the evidence to sustain his conviction. *See id.* (citing *Wright v. West*, 505 U.S. 277, 296–97 (1992)). Another case addresses the pleading burden placed upon the prosecution by the Federal Rules of Criminal Procedure. *See id.* (citing *Mathews v. United States*, 485 U.S. 58, 64–65 (1988)). Sanchez also identifies a California Supreme Court case which stands for the proposition that a jury must determine the ultimate facts on each *element* of a charged crime, and a court can neither direct the jury to reach a conviction nor direct the jury that an element of a crime has been established as a matter of law. *See id.* (citing *People v. Hedgecock*, 51 Cal. 3d 395, 407-09 (1990)); *accord Connecticut v. Johnson*, 460 U.S. 73, 84 (1983); *People v. Figueroa*, 41 Cal. 3d 714, 733 (1986). This case presents none of these issues.

The pleadings of a pro se litigant are entitled to the benefit of liberal construction. *See Rickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, this Court is not obliged to craft a tenable legal argument based on a single sentence in a brief that supplies neither legal nor factual authority for a litigant's position. *See Jones v. Gomez*, 66 F.3d 199, 204–05 (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). The most charitable interpretation this Court can give Sanchez's Petition is that he claims the failure to instruct on voluntary intoxication somehow equated to the trial judge removing the ultimate factual

question of Sanchez's guilt from the jury, which might violate due process consistent with *Connecticut v. Johnson*, 460 U.S. at 84.  Sanchez's conclusory briefing to the California Court of Appeal and Supreme Court fails to supply pertinent legal authority or explain how or why the trial judge's refusal to give the requested instruction violated due process as he claims.  His Petition adds nothing to the analysis because he simply incorporates his state court arguments by reference in their entirety.  *See* ECF No. 1 at 7.  Thus, not only has Sanchez failed to identify "clearly established" Supreme Court law that could guide this Court's analysis, he has also failed to explain how any law, clearly established or otherwise, was misapplied by the courts of California in his case.

Even so, this Court has independently reviewed the instructions given to the jury in this matter, and they reveal the trial court accurately instructed the jury both on its duty to find the facts, and its obligation to decide whether the prosecution had proven the murder charge beyond a reasonable doubt.  *See* ECF No. 17-1 at 106–07, 110, 135–37.  Although the Court of Appeal's Opinion does not explore the due process sufficiency of these instructions, its implicit rejection of Sanchez's due process claim is a textbook application of *Connecticut v. Johnson*, and therefore Sanchez could not meet the high burden under 28 U.S.C. § 2254(d) to prove the state court applied federal law in a manner that is unreasonably erroneous.  This Court has accordingly found no error on this ground.

## C.    Sanchez's Challenge To The Jury Instructions On Self-Defense And Provocation Are Procedurally Defaulted, And They Are Meritless Because They Do Not Raise Federal Questions.

Sanchez claims the trial court's instructions on "self-defense/defense of another and sudden quarrel/heat of passion voluntary manslaughter were prejudicially incomplete and misleading."  ECF No. 17-18 at 61.  He claims constitutional error because the instructions as given allegedly absolved the prosecution of its burden to prove "the absence of self-defense/defense of another" and "the absence of hea[t] of passion" beyond a reasonable

1    doubt. *Id.* at 68. He also claims federal constitutional error under the "materiality"

2    standard he asserted for the instruction on voluntary intoxication. *See id.* at 68–69.

3    **1.    This claim is procedurally defaulted.**

4        The procedural default doctrine bars federal habeas review of a state court conviction

5    where there are "independent" and "adequate" state procedural grounds to support the

6    judgment. *See Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012). The state procedural rule in

7    question must not derive from federal law, and it must be "firmly established and

8    consistently followed" in state courts. *See id.* A prisoner may demonstrate an exception

9    should apply if there is "cause for the default" and "prejudice from a violation of federal

10   law." *See id.* at 10. When a litigant fails to object to jury instructions at trial, and a state

11   appellate court deems the argument forfeited or waived, any claimed error is procedurally

12   defaulted on habeas review and even the United States Supreme Court is "without authority

13   to address" claims of instructional error. *See Sochor v. Florida*, 504 U.S. 527, 534 (1992).

14       *Sochor*, which is virtually indistinguishable from this case, unequivocally dictates

15   the result here. Sanchez concedes that his trial counsel acceded to the trial court's

16   instructions on self-defense and voluntary manslaughter without objection or request for

17   clarification. ECF No. 17-18 at 61. This Court's independent review of the record

18   corroborates the instructions were given at counsel's request, and in the case of self-defense

19   *over the prosecution's objection*. *See* ECF No. 17-11 at 114, 115, 132–34 (8 RT 1164:15–

20   21, 1165:24–27, 1182:8–1184:2). On this basis, the Court of Appeal held Sanchez had

21   "forfeited his claim of error" by failing to seek clarification or modification from the trial

22   court. ECF No. 17-21 at 24. California's forfeiture doctrine is firmly established and

23   consistently applied. *See People v. Livingston*, 53 Cal. 4th 1145, 1165 (2012); *People v.*

24   *Saunders*, 5 Cal. 4th 580, 589-90 (1993). Although the Court of Appeal also addressed the

25   substance of the claim on the merits in dicta as an alternative holding, this does not change

26   the result of Sanchez's procedural default. *See Harris v. Reed*, 489 U.S. 255, 264 n.10

27

28

(1989); *Towery v. Shriro*, 641 F.3d 300, 311 n.2 (9th Cir. 2010).  Sanchez has made no showing there was cause to excuse his forfeiture, so this Court concludes the claim is procedurally defaulted.

> ## 2.    Notwithstanding the procedural default, the claim is meritless.

Sanchez argues in conclusory fashion the trial court's instructions on self-defense and voluntary manslaughter violated the due process requirements of proving the absence of both self-defense and provocation in a murder case.  *See* ECF No. 17-18 at 68.  He also raises his "materiality" argument without any further elaboration of its contours than he did in the context of the voluntary intoxication instruction.  This Court finds no error for a host of reasons.

Sanchez directs this Court to the body of case law, already discussed at length, *supra*, which addresses the due process implications of giving lesser included offense instructions in homicide cases.  *See* ECF No. 17-18; *Mullany v. Wilbur*, 421 U.S. 684, 703 (1975); *People v. Martinez*, 31 Cal. 4th 673, 707 (2003); *People v. Rios*, 23 Cal. 4th 450, 458–59 (2000).  But Sanchez fails to explain how those cases, which address *imperfect* self-defense as a lesser included offense of murder, impact the ultimate burden of persuasion in a case where the defendant claims *perfect* self-defense.  Under California law, perfect self-defense is a complete defense to homicide, not a lesser included offense of murder.  *See People v. Barton*, 12 Cal. 4th 186, 194–98 (1995).  Although due process, as interpreted by the Supreme Court in *Winship* and *Mullaney*, imposes instructional requirements in certain murder cases, the Supreme Court has expressly refused to extend categorically the *Winship* doctrine to affirmative defenses.  *See Gilmore v. Taylor*, 508 U.S. 333, 343 (1993); *see also Martin v. Ohio*, 480 U.S. 228, 235–36 (1987) (holding states may, consistent with due process, require defendants to prove perfect self-defense by a preponderance of the evidence).  Thus, the Constitution did not require the prosecution to disprove *perfect* self-

1   defense as a condition of obtaining a conviction, and Sanchez has therefore identified no

2   clearly established federal law of which he can claim a violation.[7]

3     Sanchez correctly states that due process required the prosecution to prove beyond

4   a reasonable doubt that Sanchez was not provoked if the evidence warranted a jury

5   instruction on the lesser included offense of voluntary manslaughter by reason of

6   provocation from a sudden quarrel or in the heat of passion.  ECF No. 17-18 at 68.

7     However, Sanchez has failed to explain in even cursory detail how the trial court's

8   instructions in this case violated that fundamental precept.  This Court's review of the

9   instructions given to the jury on voluntary manslaughter by reason of provocation show

10  the jury was accurately instructed that "[t]he People have the burden of proving beyond a

11  reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the

12  heat of passion."  *See* ECF No. 17-1 at 142.  This Court can only conclude that, far from

13  an erroneous application of federal law, the Court of Appeal implicitly rejected Sanchez's

14  argument because, in this Court's assessment, the trial court's voluntary manslaughter

15  instructions conformed to due process.

16    As set forth, *supra*, this Court will construe Sanchez's "materiality" argument [ECF

17  No. 17-18 at 68–69] as a charge that the trial court somehow instructed the jury it could

18  return a guilty verdict without independently finding the prosecution had proven each

19  element of the charged crime beyond a reasonable doubt.  This Court has already concluded

20  this is not a "clearly established" matter of constitutional law as argued by Sanchez on the

21  facts of this case.  Moreover, the jury was accurately instructed on its role and the obligation

22

23

---

24  [7] Had Sanchez identified clearly established law there would nonetheless be no error.  The
    self-defense instruction given to the jury in this matter specifically indicated the

25  prosecution carried "the burden of proving beyond a reasonable doubt that the killing was

26  not justified."  *See* ECF No. 17-1 at 144.  Thus, even if due process imposed the *Winship*

27  and *Mullaney* requirements here, the jury would have been properly instructed.

28

to find the facts and not convict unless the prosecution proved its case beyond a reasonable doubt.  *See* ECF No. 17-1 at 106–07, 110, 135–37. This Court, accordingly, finds no error on Sanchez's third claim.

> ### D.    There Was No "Cumulative Error" Amounting To An Abridgment Of Sanchez's Due Process Rights Because There Was No Error to Cumulate.

Sanchez asserts the trial court's alleged errors identified in the first three grounds for relief, if individually harmless, had a "cumulative effect" that "irreparably prejudice[d] Sanchez's constitutional right to a fair trial."  *See* ECF No. 17-18 at 72; *see also* ECF No. 1 at 9.  Sanchez does not identify a Supreme Court case setting forth "clearly established" federal law directly on point.  *See* ECF No. 17-18 at 72.  Respondent appears to agree with Sanchez that this Court should review for cumulative error, and, like Sanchez, it directs this Court's attention to *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007), in which the Ninth Circuit, relying on *Chambers v. Mississippi*, 410 U.S. 284, 302–03 (1973), held "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *See* ECF No. 14-1 at 46.  Respondent also cites *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011), for the proposition that a federal court may grant a writ of habeas corpus on the basis of cumulative error "when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." *See id.*

The Supreme Court has neither explicitly overruled nor endorsed either *Parle* or *Ybarra*, but in the years following those decisions the high court has forcefully admonished the courts of appeals, including the Ninth Circuit, against framing narrow Supreme Court precedents at a high level of generality to justify habeas corpus relief.  *See Lopez v. Smith*, 574 U.S. 1, 6 (2014); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *accord Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Robertson v. Pichon*, 849 F.3d 1173, 1182 (9th Cir.

2017).  At the same time, the Supreme Court has also held a "general standard" may be derived from its jurisprudence in support of habeas corpus applications.  *See Marshall v. Rodgers*, 569 U.S. 58, 62 (2013); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In *Chambers*, the decision on which the Ninth Circuit's cumulative error doctrine rests, the Supreme Court narrowly held evidentiary exclusions, coupled with a denial of the fundamental right to cross-examination, effectively deprived the criminal defendant of a fair trial in violation of due process.  *See* 410 U.S. at 302–03.  The Court explicitly stated it "establish[ed] no new principles of constitutional law" and limited its holding to "the facts and circumstances of" the case before it.  *Id.*  This Court's interpretation of *Chambers* is that, based on the high court's language explicitly limiting the holding, *Chambers* should be narrowly construed such that any case that may be distinguished on its facts would fall outside the rule.  The Supreme Court decisions in *Lopez* and *Jackson* further inform this Court's interpretation of *Chambers*, and lead to the conclusion that *Parle* and its progeny erroneously treated *Chambers* as establishing a general principle of clearly established federal law.[8]  Here, the claimed errors differ in kind from the errors identified by the Supreme Court in *Chambers*.  Thus, this Court concludes there is not a clearly established federal law at issue in this case.

In an appropriate case, this Court might be forced to choose between following *Parle*, which directs the courts of this Circuit to consider cumulative error, and the string of cases that post-date *Parle*, which direct federal courts to follow the Supreme Court's holdings and "defer to the state court's decision" in cases when the Supreme Court has not established a controlling legal principle.  This Court need not decide, at least in this case,

---

[8] As further evidence the cumulative error doctrine is not a matter of clearly established Supreme Court doctrine, this Court notes the Circuits are split on the matter, which suggests the law is unclear at best.  *Compare Parle*, 505 F.3d at 927, *with Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

whether the cumulative error doctrine is a matter of clearly established federal law because according to the Ninth Circuit there can be no cumulative error when there are no errors in the trial proceeding that could cumulate.  *See United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011).  This Court has already determined Sanchez has not identified a single instructional error committed by the Superior Court.  Assuming without deciding that habeas corpus relief may issue for cumulative error, Sanchez's Petition fails because no errors cannot be deemed cumulative.

## E.    This Court Lacks Jurisdiction To Review The Restitution Order.

Sanchez claims the trial court violated his due process rights by imposing fines and restitution without first holding a hearing on his ability to pay.  ECF No. 1 at 10; ECF No. 17-18 at 74 (citing *People v. Duenas*, 30 Cal. App. 5th 1157, 1168, 1172 (2019)).  This Court may only entertain a writ petition on grounds the petitioner is "in custody" in violation of federal law.  *See* 28 U.S.C. § 2254(a).  The "in custody" requirement limits this Court's jurisdiction to hear habeas petitions to situations where a person is "literally" incarcerated or otherwise held against his will—and restitution orders do not meet that standard because they impose no significant restraint on a petitioner's liberty.  *See Bailey v. Hill*, 599 F.3d 976, 977–79, 982 (9th Cir. 2010).   Even here, where Sanchez is indisputably "in custody" and his Petition asserts grounds for relief over which the Court has jurisdiction, the Court nonetheless should not hear any challenge to the restitution order.  *See Crawford v. Koenig*, 2:21-cv-02679-FLA (AGRx), 2021 WL 5263854, at *3 (C.D. Cal. Sept. 30, 2021); *accord Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013); *Washington v. Smith*, 564 F.3d 1350, 1350-51 (7th Cir. 2009).  This Court accordingly finds there is no jurisdiction to award relief on this ground.[9]

---

[9] Respondent urges the Court to deny this request for relief because it is procedurally defaulted.  *See* ECF No. 14-1 at 48. The Court notes Sanchez conceded the fines and restitution at his sentencing hearing.  *See* ECF No. 17-15 at 3–4 (12 RT 1453:24–1454:5).

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   To obtain a certificate of appealability, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court DENIES a certificate of appealability.

## VI.    CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED the Court ADOPTS the report and recommendation in part and DENIES the petition for writ of habeas corpus. The Court also DENIES a certificate of appealability. The Clerk of the Court is instructed to close the file.

**IT IS SO ORDERED.**

Dated:  January 3, 2023

Hon. Gonzalo P. Curiel
United States District Judge

---

However, the Court does not believe it has jurisdiction to consider the issue of procedural default given the lack of jurisdiction to review the merits of the underlying claim.